**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Joe Mack SHIRLEY,
Defendant-Appellant.**

**No. 14300.**

Missouri Court of Appeals,
Southern District,
Division Two.

June 5, 1987.

M. Elise Branyan, Asst. Public Defender, Springfield, for defendant-appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Judge.

A jury has found defendant Joe Mack Shirley guilty of forcible rape in violation of § 566.030, RSMo Supp.1983, and kidnapping, in violation of § 565.110, RSMo 1978. Defendant's punishment has been fixed at five (5) years' imprisonment on each count. The trial court ordered that the terms be served consecutively. Defendant appeals, contending that the evidence is not sufficient to support the judgments of conviction and that certain evidence was erroneously received. We affirm.

In determining the sufficiency of the evidence to support the judgment of conviction, this court must accept as true all evidence favorable to the verdict, together

with all reasonable inferences to be drawn therefrom, and reject all evidence and inferences to the contrary. *State v. Fletcher*, 709 S.W.2d 924, 925[1] (Mo.App.1986); *State v. Cooper*, 673 S.W.2d 848, 849[1, 2] (Mo.App.1984).

So taken, the evidence is: On New Year's Eve, the victim, a woman 24 years of age, attended several parties in Springfield. She consumed some alcohol. She left the last celebration she attended about 2 to 3 a.m. As she drove north on National Avenue in south Springfield, she noticed an automobile "kind of pacing me alongside." The victim turned east on Grand Avenue, and the other vehicle started following her closely. Finally the other vehicle struck the victim's car when she stopped at a controlled intersection. Somewhat frightened, the prosecutrix rolled her window down and addressed the defendant, who was driving the other vehicle. The defendant was carrying a club. He opened the door of the victim's car and ordered her to get out. The defendant then took his victim by the arm and forced her into his car. The prosecutrix got in the defendant's car; defendant then "backed up and took off." Defendant drove to a rural area near the intersection of Route D and Farm Road 144 in Greene County. As defendant was driving away from the intersection, the prosecutrix asked him what he wanted; the defendant instructed her to disrobe.

The roads were covered with ice and snow, and as the defendant came to the place where the assault occurred, he went in the ditch and became stuck in the snow. The defendant became very angry because he could not get out of the ditch, so angry, according to the prosecutrix, that he broke the "stick" off the "stick shift." The victim had disrobed. The defendant pulled his trousers down and started to force the victim to perform an oral sexual act. The victim begged the defendant not to make her "do that." The defendant then ordered the prosecutrix to "get on top of [him]." She did so and the defendant did "penetrate in front." The defendant then attempted to "penetrate in the rear" but was unsuccessful. The victim was then allowed to dress.

The defendant and the victim then made an effort to get the defendant's car out of the ditch. A farmer who lived nearby heard the noise of a "car stuck in the ditch." This farmer, Charles Webb, testified that he got in his truck and helped the defendant out of the ditch. The victim made no outcry and did not ask for help.

Apparently the defendant's vehicle was operative despite the broken stick shift, for he drove the victim back to the intersection where he had accosted her. The victim's vehicle was gone. At her request, the defendant drove the victim to a telephone so she could call the police department about her car. The prosecutrix called the police department. She was told there was no report on her car and she did not report the rape. Defendant then drove to a service station where he bought gasoline. Thereafter, the defendant took his victim to her sister's residence. As he was leaving, the victim was able to obtain the number of his license plate. The victim then reported the assault.

■ The defendant argues that the State failed to prove forcible rape because it did not prove penetration, lack of consent, or forcible compulsion. The victim was a mature woman; she testified directly to penetration. On this issue, the uncorroborated testimony of the prosecutrix is sufficient. *Willis v. State*, 630 S.W.2d 229, 234[11] (Mo.App.1982). The fact that a physician, upon examination, could find no evidence of trauma nor any sperm cells in the victim's vagina does not invalidate the conviction. *State v. Edgar*, 710 S.W.2d 2, 3–4[1][4] (Mo.App.1985); *State v. Salkil*, 659 S.W.2d 330, 333[1–4] (Mo.App.1983); *State v. Mazzeri*, 578 S.W.2d 355, 356[3, 4] (Mo.App.1979). As far as lack of consent and forcible compulsion are concerned, the victim testified she did not consent but submitted because she was put in fear. Sexual intercourse which is not resisted because of fear is not consensual. *State v. Hannett*, 713 S.W.2d 267, 271[1, 2] (Mo.App.1986); *State v. Salkil*, 659 S.W.2d at 333[5–7]. Here, the defendant had literally tracked his victim a considerable distance

very late on a cold night; he pulled her from her vehicle into his, forcing her to abandon her car at an intersection where it was later found by police officers. When the victim's automobile was found, the engine was still running, the headlights were on, and the passenger door was open. The defendant drove to a relatively remote area, indicating that he intended to have carnal knowledge of the prosecutrix. Defendant had a club of some order. The evidence was sufficient to establish "forcible compulsion" as that term was defined by § 556.061(11), RSMo Supp.1983.

Section 565.110, RSMo 1978, provided, in material part:

"1. A person commits the crime of kidnapping if he unlawfully removes another without his consent from the place where he is found ... for the purpose of ...

(4) Facilitating the commission of any felony or flight thereafter; ...."

 Forcibly removing a victim from an automobile, or even a vacant lot for the purpose of committing a sexual assault upon the person taken constitutes kidnapping within the intent of this statute. *State v. Jackson*, 703 S.W.2d 30, 34[6] (Mo. App.1985); cf. *State v. Mayhue*, 653 S.W.2d 227, 240–41 (Mo.App.1983). The evidence we have recited is sufficient to show that the defendant removed the victim from the place where he found her, without her consent, for the purpose of facilitating the commission of forcible rape. The evidence supports the conviction of kidnapping.

Defendant's further point is that the trial court erred in receiving certain medical records in evidence and erred in receiving the testimony of a psychiatric nurse.

The defendant filed a broad motion to suppress "any statement, admission, or confession, oral or written, [made] by defendant through [sic] investigative officers." Defendant's suggestions in support of this motion specifically addressed hospital records concerning the defendant which were obtained from the Marian Center, a psychiatric hospital operated as part of the St. John's Regional Health Center in Springfield.

The document to which objection is made is an admission statement taken by a nurse when the defendant presented himself for admission to the Marian Center at 7:30 a.m. on January 1, 1984. The document before us is a history of present complaints given by the defendant. It is long and complete and contains incriminating statements. We have only part of the record before us.

The defendant moved to suppress these records on the ground that the records were privileged under the provisions of § 491.060(5), RSMo Supp.1983. After hearing evidence, the court denied the motion to suppress. When, however, the records were offered in evidence, the trial court refused the offer, thus:

"MR. MONROE: Offer State's Exhibit 20, the batch of medical records identified by Detective O'Neal and Rose Ann Heubner Shinn.

THE COURT: You are objecting are you, Mr. Gaither?

MR. GAITHER: Yes, Your Honor.

THE COURT: All right. *The objection will be sustained.*" (Our emphasis.)

 As to the written records (and they are not all before us), the point is subject to the rule that when a defendant receives all the relief he asks, no error results, and the court's rulings and admonitions obviate any prejudicial error. *State v. Porter*, 458 S.W.2d 256, 260[7] (Mo.1970); *State v. Craig*, 433 S.W.2d 811, 813[1] (Mo.1968); *State v. Wendell*, 542 S.W.2d 339, 342[7, 8] (Mo.App.1976).

 The testimony of the nurse who took the statement is also objected to as being privileged. The defendant did make some damaging statements to this witness and she was allowed to testify to those statements upon trial, but the basis of objection upon trial and in this court is that the statements were privileged. The physician-patient privilege created by § 491.-060(5) applies only to physicians. *Griggs v. Griggs*, 707 S.W.2d 488, 490[1] (Mo.App. 1986). The precedents by which we are

bound indicate that a nurse may come within the scope of § 491.060(5) *if* she is acting under the direction of a physician or assisting him in treating his patient. *State v. Scott*, 491 S.W.2d 514, 519[8][9] (Mo. banc 1973); *State v. Burchett*, 302 S.W.2d 9, 17[8][9, 10] (Mo.1957). See also *Myers v. State*, 251 Ga. 883, 310 S.E.2d 504, 505–506[2][3] (1984); 8 Wigmore, Evidence § 2382 (McNaughton rev. 1961); Annot, 47 A.L.R.2d 742 (1956). Such is not the case here. The nurse was working for and under the direction of the Marian Center and was not assisting or working under the direction of any physician when she heard the defendant's statements. The reception of her testimony was not error for the reason asserted.

There is no error in any respect briefed or asserted in this court. Accordingly, the judgment is affirmed.

PREWITT, P.J., concurs.

FLANIGAN, J., concurs in result and in concurring opinion.

MAUS, J., concurs in separate opinion.

MAUS, Judge, concurring.

The majority opinion finds statements made by the defendant to the nurse not privileged because she was employed by the hospital and was not acting under the direction of a physician. This position finds support in the authorities. Annot., Evidence—Privilege—Nurse, 47 A.L.R.2d 742 (1956). Also see *Ramon v. State*, 387 So.2d 745 (Miss.1980); *State v. McCoy*, 70 Wash.2d 964, 425 P.2d 874 (1967), cert. denied, 389 U.S. 873, 88 S.Ct. 161, 19 L.Ed.2d 155 (1967). The fundamental basis for that position is that the privilege extends to only communications to a nurse who is acting as an agent for a licensed physician. *State v. Gibson*, 3 Wash.App. 596, 476 P.2d 727 (1970).

I do not subscribe to that limitation. The purpose of the statute was declared at an early date.

Though in derogation of the common law, courts have not applied the rule of strict construction sometimes applied to statutes of that character. To the contrary, the right doctrine seems to be that the policy of the statute is an elevated one. It was intended to invite confidence between patient and physician and to prevent a breach of such confidence, and should be so construed as to further its life and purpose.

*Green v. Terminal R. Ass'n.*, 211 Mo. 18, 109 S.W. 715, 720 (1908). It is established by the record the nurse was obtaining information to be considered by a licensed physician in the treatment of the defendant. It is common knowledge this is standard procedure in many circumstances.

The physician-patient privilege extends to hospital records. *State ex rel. Benoit v. Randall*, 431 S.W.2d 107 (Mo. banc 1968). The records in such cases obviously include information disclosed to nurses employed by the hospital. *Sims v. Charlotte Liberty Mutual Insurance Co.*, 257 N.C. 32, 125 S.E.2d 326 (1962).

The confidentiality of information supplied by a patient should not depend upon who pays a nurse or whether or not a licensed physician is present. The function of the nurse should control. "But the application of strict agency principles in this context would seem inconsistent with the realities of modern medical practice, and the preferable view is that of the courts which have based their decisions upon whether the communication was functionally related to diagnosis and treatment." McCormick on Evidence, § 101, p. 250 (3d ed. 1984) (footnotes omitted).

A similar privilege exists pertaining to information imparted by a client to his lawyer. Long ago the scope of that privilege was defined. "The rule of common law confined the privilege to counsel *and the media of communication* between client and counsel, as clerk, interpreter, etc., and this rule has not been enlarged by the statute." *Tyler v. Hall*, 106 Mo. 313, 17 S.W. 319, 321 (1891) (emphasis added). As an example, the privilege has been held to be applicable to a statement by an insured to his insurer to be supplied to a lawyer in contemplation of litigation. *State ex rel. Cain v. Barker*, 540 S.W.2d 50 (Mo. banc

1976). In my opinion in this case the nurse was the media of communication between the defendant and a licensed physician.

However, the trial court found the defendant had voluntarily waived the privilege in respect to the hospital records which substantially included his statements in question. This determination is supported by the evidence. The admission of the testimony was not prejudicial error. *Demonbrun v. McHaffie*, 348 Mo. 1120, 156 S.W.2d 923 (1941). I concur in the result.