STATE of Missouri, Respondent,

v.

Steven Leroy ROBY, Appellant.

No. WD 40090.

Missouri Court of Appeals,
Western District.

Sept. 6, 1988.

Cenobio Lozano, Jr., Public Defender, Harrisonville, for appellant.

William L. Webster, Atty. Gen., Karen A. King, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, P.J., and
LOWENSTEIN and FENNER, JJ.

LOWENSTEIN, Judge.

The defendant Steven Roby was found guilty by jury in Vernon County of first degree murder under Section 565.020.1, RSMo 1986. Roby was sentenced to life imprisonment without eligibility for probation or parole. On appeal, Roby alleges the trial court should have granted his motion for judgment of acquittal at the close of evidence. The defendant contends that viewing the evidence most favorable to the verdict, the state has failed to produce enough evidence to sufficiently link Roby to the murder of his grandmother, Georgia Beaver. "In testing the sufficiency of the evidence, facts and appropriate inferences intelligently drawn therefrom must be assessed in a light most favorable to the verdict and all adverse inferences and evidence disregarded. Review is limited to whether a submissible case was presented to the jury." *State v. Gobble*, 675 S.W.2d 944, 946 (Mo.App.1984), *citing State v. Doebert*, 659 S.W.2d 280, 281 (Mo.App. 1983).

The role of this court is not to weigh the evidence, rather it is to ascertain whether there was sufficient evidence put forth at trial so that a reasonable person *could* conclude that the defendant is guilty as charged. *State v. Barber*, 635 S.W.2d 342, 343 (Mo.1982).

The evidence in this case is purely circumstantial. When the State relies on a chain of circumstantial evidence to establish its case, it bears the burden of forging each link in that chain tending to establish the guilt of the accused beyond a reasonable doubt. *State v. Irby*, 423 S.W.2d 800, 802 (Mo.1968). "[T]he facts and circumstances relied upon to establish guilt must be consistent with each other and with the hypothesis of defendant's guilt. The facts and circumstances must also be inconsistent with and exclude every reasonable hypothesis of defendant's innocence. But the circumstances need not be absolutely conclusive of guilt or demonstrate impossibility of innocence, and the mere existence of

other possible hypotheses is not enough to remove the case from the jury." *State v. Doebert,* supra, at 282, *citing State v. Means,* 628 S.W.2d 426, 428 (Mo.App.1982).

Mr. and Mrs. Beaver lived in a house three to four miles east of Adrian, in rural Bates county. On October 2, 1987 sometime between the hours of 5:30 and 7:15 Georgia Beaver was murdered. Her husband, William J. Beaver, an Adrian, Missouri police officer testified that he and his wife had dinner that evening at approximately 5:30 p.m.. Shortly thereafter, Mr. Beaver made his way out to his barn to feed his dogs and mules. Because it was raining Mr. Beaver wore a yellow slicker and galoshes. When he returned some fifteen minutes later he found his wife lying on the back porch with her legs up against the door—she was bleeding from stab wounds. Mr. Beaver in order to gain entrance to the house had to squeeze through the porch door. It appears that the Beavers seldom, if ever, used any other entrance to the house.

Mr. Beaver realizing that his wife was still alive called for an ambulance. He then made his way to a bathroom, where he retrieved a blanket which he used to cover the victim. The record does not reflect that Mr. Beaver took any other measures to assist his wife.

The ambulance crew arrived shortly thereafter and apparently forced Mr. Beaver out of the house so that they could better assist his wife. Mr. Beaver was later questioned by police concerning the incident, some blood stained clothing of his was confiscated and examined. The police accepted his explanation that the blood on his clothing came from a cut he got while tending to his chores.

The Bates County Coroner pronounced Mrs. Beaver dead and examined her body to determine the cause of death. During his examination the coroner found wounds in the neck area, on the right side and top of the head, the heart region and on the hands. He determined that the cause of death was a stab wound to the heart. A pathologist, later determined that the blood loss from the stab to the heart was the cause of death.

One of the police officers, during an investigation of the Beaver home, discovered a paring knife in the kitchen which is believed to be the murder weapon. The knife appeared to the officer to have been washed. Spots or splatters of blood were found throughout the house. There was a trail of blood from a sofa in the living room through a double doorway in the dining room to the kitchen doorway and then across the kitchen to the back porch where the body was found. The officer also observed that the yellow slicker, which Beaver testified he wore when he went out to do his chores, was dry. Also noticed and photographed were two open purses on the kitchen table. In one of the purses was found some change totaling no more than two dollars. The police observed nothing particularly unusual about the position of the purses or the fact that they were open.

During the investigation the officers took a cursory look around the grounds, but found nothing unusual. The ground was "squishy" with standing water so no definite tracks were observed. The officers did not at anytime thereafter inspect the property, nor were any aerial photographs taken of the land. Some three months later Roby's brothers's bicycle was discovered in a milo field about one hundred and fifty yards from the Beaver home.

The defendant, Steven Roby, is the victim's grandson. The day before the murder he had helped his grandmother around the house which was his usual custom. Mr. Roby was supposed to do some more work the next day, but Mr. Beaver told him over the telephone that he would not be needed that day because it was raining. It appears that at the time of the murder the defendant was in some financial distress. He was living in a garage behind the home of his mother and stepfather. The victim had in the past given her grandson money. According to a stipulation entered into evidence, one of the victim's friends was going to testify that about a month prior to her death Georgia Beaver told him that she

was not going to give Steven Roby any more money.

The day of the murder, October 2, 1987, the defendant was seen riding a bicycle heading east on Highway 18 from Adrian at 1:30 P.M. This route was in the direction of his grandmother's home, some two miles away. Apparently the defendant had borrowed his brother's bicycle. The defendant was not seen or heard from for the period from before the murder until October 4. On October 4, some clothing was seized from the defendant's home which was very wet and had traces of mud, but did not contain blood stains.

Upon being questioned, the defendant gave conflicting testimony as to his whereabouts on the day of the murder and the two following days. In one version the defendant gave a statement that he had borrowed his brother's bicycle on the day of the murder and was riding the bike around and heading east on Highway 18 from Adrian. He stopped on the road to drink beer. He then decided to go back to town and ride the bicycle to Butler. Butler is south of Adrian. While making his way to Butler the defendant observed a man in a pickup truck. According to Roby the two struck up a conversation and decided to drive to a party. The defendant put his bicycle in the back of the man's truck. The defendant stated he thought the bicycle was still in the bed of the truck. The defendant also claimed to have been at a two-day party, which apparently was held in an open field. This was despite the fact that it rained intermittently throughout that period of time.

In the other version of the story the defendant maintained he was on his bicycle the day of the murder and went one mile outside of town. Because it was raining very hard he sat on a gravel pile waiting for the rain to stop. When it didn't cease, the defendant went into town and bought a six-pack. He then went to his house. After drinking all the beer he made his way back to the highway and hitchhiked to Butler.

In sum, the relevant circumstances tending to establish the state's case are as follows: (1) Roby was seen riding a bicycle two miles from the victim's house at least four hours before the murder; (2) the bicycle which Roby was riding was found three months after the murder in a field one hundred and fifty yards from the victim's house (and appeared to have been in that spot for some time); (3) the defendant made inconsistent statements concerning his activities from the time of the murder until October 4; (4) the defendant's poor financial state supplied a motive (though no evidence was introduced at trial showing that money was taken from the Beaver's household.); and (5) the attacker was familiar with both the layout of the Beaver's home and their habits (having chosen to enter the house when Mr. Beaver was doing his chores and completing the attack in less than fifteen minutes).

There was no direct evidence submitted concerning whether Roby was in his grandmother's house at the time of the murder. Likewise no evidence was submitted proving that the bicycle was on the victim's property at the time of the murder. Nor was *Mr. Roby found with any of his grandmother's belongings, and although the victim's purses were found opened it does nothing to cast any inference of a robbery by the defendant or his having committed the homicide.

In short, the state's theory must assume Roby was in his grandmother's house at the time of the murder; that Mr. Roby's motive was to rob his grandmother; and that he hid his brother's bicycle in an effort to conceal evidence. Being seen in the vicinity of the crime scene hours before the event, having the "getaway" bicycle found months later near the scene, and having made dubious statements to authorities as to whereabouts at the time of the charged crime just do not add up to sufficient evidence to support a guilty verdict.

In *State v. Morse*, 515 S.W.2d 608, 610 (Mo.App.1974), a jury convicted the defendant of second degree burglary of and stealing from one Carl Willhite's house. The evidence established: "(1) at some unknown time between 10 p.m. September 5, 1971, and 6 p.m. September 7, 1971, a bur-

glary and stealing occurred at the Willhite house; (2) at some unknown time between the times and dates just mentioned, defendant's truck was on the Willhite premises; (3) and at 2 a.m. September 6, 1971, defendant was at a point one to one and a half miles from Willhite's home." The appellate court concluded those facts raised only a suspicion of defendant's guilt, because it was not established that the defendant was on Willhite's grounds at the time of the burglary. See also *State v. Lane*, 497 S.W. 2d 207, 209 (Mo.App.1973) ("fact that the accused may have been present at the scene of the crime [and there is no evidence in this case that Roby was] or that he may had the opportunity to commit the offence is not circumstantial evidence to justify a conviction.").

■ In a case where the evidence is not sufficient to sustain a conviction the only remedy available is an acquittal. *Burks v. United States*, 437 U.S. 1, 10–11, 98 S.Ct. 2141, 2146–47, 57 L.Ed.2d 1 (1978). The evidence here is sufficient only to justify an inference Roby committed the crime in question. But such an inference is not enough—a verdict based on suspicion, conjecture or on surmise, no matter how strong is not sufficient to support a criminal conviction. *State v. Morse, supra*, at 608. The state's evidence is ruled insufficient to sustain a judgment beyond a reasonable doubt that the defendant committed the murder. In this case based on circumstantial evidence the facts and inferences must be irreconcilable and inconsistent with innocence and must so clearly point to guilt as to exclude every reasonable hypothesis of innocence. *State v. White*, 665 S.W.2d 359, 362 (Mo.App.1984). Such is not the result here—the judgment of acquittal should have been sustained. *State v. Duvall*, 625 S.W.2d 149, 151 (Mo. App.1981). The judgment is reversed and the defendant ordered discharged.

All concur.