STATE of Missouri, Respondent,

v.

William JANKIEWICZ, Appellant.

No. 74234.

Supreme Court of Missouri,
En Banc.

April 21, 1992.

Arthur S. Margulis, David R. Crosby, Clayton, for appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

CHARLES B. BLACKMAR, Senior Judge.

The defendant was convicted of one count of rape in violation of *§ 566.030,* *RSMo 1986* and one count of sodomy in violation of *§ 566.060, RSMo 1986,* and received consecutive sentences of seven years on each count. The victim is his daughter, who was two years old at the time of the charged offenses. Physical evidence showed that the child was sexually abused, but the only direct evidence identifying the defendant as the miscreant consisted of the victim's out-of-court statements. The trial court admitted these statements under the authority of *§ 491.-075, RSMo 1986.* The court of appeals affirmed the convictions but remanded for resentencing because the trial judge had assumed that consecutive sentences were mandatory.[1] We granted transfer to consider the important evidentiary problems raised by *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), decided after the trial but before the court of appeals' decision. We are unable to conclude that the defendant is entitled to judgment of acquittal, but find prejudicial trial error and conclude that the trial court must reconsider the admissibility of the victim's statements under the guidance of *Idaho v. Wright.* We must necessarily describe the sordid details of the statements with some particularity. We make use of parts of Judge Crane's opinion for the court of appeals, without further attribution.

*1. The Facts*

The child victim, E____, is an only child. Her parents separated on November 6, 1987, after 11 years of marriage. E____ lived with her mother after the separation. On December 2, 1987, when E____ was "just a little over two," her mother took her to the Sexual Abuse Management (SAM) clinic of Cardinal Glennon hospital. A physical examination revealed no indications of abuse.

Her mother testified to an incident on January 2, 1988, as follows:

She was taking a nap, and she called out, "Mamma, mamma," and I came in the bedroom to pick her up, and she said, "Daddy kisses my vagina, and [E____]

1. The state agrees that resentencing is appropriate. *See State v. Burgess,* 800 S.W.2d 743, 744 (Mo. banc 1990); *Williams v. State,* 800 S.W.2d 739, 740 (Mo. banc 1990).

kisses daddy's vagina," and I laughed. I said "What," and she repeated the statement, and I picked her up, and that was the incident.

Prior to making this statement the child had seen her father twice since the separation, both times in the company of her mother in public places. Later on January 2, E___'s mother took her to visit her father, who was hospitalized. He made a remark concerning the physical examination that aroused the mother's concern. Because of this event, the child's mother again took her to the SAM clinic on January 6, 1988. The nurse practitioner was unable to understand the victim's speech and made no further attempt to interview her. No physical examination was performed.

The defendant obtained a court order in January of 1988, allowing him two weekend visits with the victim, who exhibited significant behavioral changes after these visits. Her mother then got in touch with the Division of Family Services (DFS), which referred her to Vicki Simmons, a professionally qualified and certified art therapist with 20 years of experience. Simmons described art therapy as a non-threatening means of encouraging a very young child to communicate. She saw the victim each week beginning March 24, 1988, and continuing up to the trial two years later, in sessions lasting approximately 55 minutes. She was advised that the victim was experiencing behavioral problems, but had no information about suspected abuse. Simmons testified that she did not usually initiate sessions by questioning the child, but rather allowed her to express herself with the assistance of drawing materials and molding clay.

During their first session on March 24, 1988, the victim made two clay figures that she identified as herself and "daddy." She stated while playing with the figures, "I kissed Daddy's vagina, Daddy kissed my vagina." Simmons had not asked any questions before E___ made the statement and did not question her about her statement.

During the next session on April 7, 1988, the victim drew a figure which she called "daddy," and said, "He is singing good morning to you. Wears panty clothes, touches vagina." Simmons asked her, "Who touches your vagina?" She replied, "Daddy." The victim then formed a piece of clay into a ball and placed it on a clay figure she identified as "daddy". She identified the ball as "daddy's vagina" and said, "Daddy hurt my vagina." Then she made coiled shapes out of clay which she identified as "daddy's tail." She wiggled one of the shapes and said, "Daddy says wiggle his tail." Simmons asked the child some questions in response to some of these statements in order to encourage her to continue to express herself, and to let her know that she was not being judged.

On April 21, 1988, the victim said, while playing with clay and drawing during a therapy session: "This is daddy. Here, make daddy's owie. Here, make a snake. Daddy's owie. Daddy put his owie in vagina. Hurt [E___]." Later in the session, she stated in a low voice, "Never ever, never ever say what you have done."

During a May 5, 1988, session the victim placed a piece of clay between the legs of a clay figure and referred to the figure as "daddy." She then removed the piece of clay from the figure and stated, "This is daddy's pee." She placed the piece in her mouth and moved it in and out, and said, "The pee goes like this. Icky stuff comes out. Daddy put his pee right here." She then lifted her dress and placed her hand between her legs on her genital area. She said, "I cried. Daddy said, '[E___] don't cry. You can do it.' Daddy hurt [E___'s] vagina. [E___] got an owie. [E___] cried."

The defendant did not see the victim in February and March 1988, but the court ordered visitation every Saturday beginning April 16. The court advised the defendant that these visits should be conducted in public and there is no indication that he disobeyed the instruction.

On June 23, 1988, the mother returned the child to the SAM clinic, where a physician conducted a physical examination. He discovered a tear in her vaginal opening,

which he described as an "old" tear because it had healed, and that healing would require four to five days after the injury. The tear was consistent with sexual abuse but could have been caused by a finger thrust into the vagina or by an object such as a stick. Because the January examination was normal the doctor concluded that the tear was inflicted after January 2.

### 2. Submissibility

■ The defendant argues that the state failed to make a submissible case. We conclude that, if the victim's statements to her mother and to the therapist are admissible, they demonstrate submissible issues both of rape and of sodomy.[2] The doctor's testimony demonstrates physical symptoms consistent with rape and these, coupled with the victim's statements of April 21, 1988, provide evidence of the essential elements of rape.

Although neither the information nor the opening statement was so specific, the only instruction on the sodomy count required the finding "that the defendant put his penis in the victim's mouth." The state is not entitled to hold its conviction on any different theory. *State v. Urban*, 796 S.W.2d 599 (Mo. banc 1990) *cert. denied,* — U.S. —, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991). This particular charge is supported only by the victim's statements to Simmons on May 5, 1988. There is no corroborating evidence, but there is precedent for upholding convictions of sex offenses on the basis of the victim's uncorroborated testimony.[3]

Inasmuch as we reverse and remand the case, we do not now decide the ultimate issue of submissibility of either count. The defendant argues that the victim's evidence contains so many inconsistencies and incongruities that it cannot be considered sufficient to support the conviction, citing several cases.[4] The state urges us to renounce the "corroboration rule," which provides that a victim's testimony must be corroborated if it "is so contradictory and in conflict with physical facts, surrounding circumstances and common experience that its validity is thereby rendered doubtful." *State v. Harris*, 620 S.W.2d 349, 353 (Mo. banc 1981). The state suggests that the jury may resolve all inconsistencies. Inasmuch as we direct the trial court to reexamine the proffered testimony in light of *Idaho v. Wright*, we believe that the issue of submissibility on the basis of evidence properly admitted is appropriately deferred until such time as the case may again reach the appellate level, if it does. We do not intend to circumscribe appellate review on a new record.

### 3. The Victim's Statements

The trial court received the victim's statements to her mother and to the art therapist under the authority of *§ 491.-075.1, RSMo 1986*, which provides as follows:

A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness.

---

**2.** When a conviction depends on inadmissible evidence, retrial is not precluded by principles of double jeopardy. *Tate v. Armontrout,* 914 F.2d 1022, 1027 (8th Cir.1990), citing *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

**3.** *See State v. Cody,* 800 S.W.2d 750 (Mo.App. 1990); *State v. Dee,* 752 S.W.2d 942, 944 (Mo.App.1988); *State v. Shirley,* 731 S.W.2d 49 (Mo.App.1987).

**4.** *State v. Harris,* 620 S.W.2d 349 (Mo. banc 1981); *State v. Roby,* 756 S.W.2d 629 (Mo.App. 1988); *State v. Kuzma,* 751 S.W.2d 54 (Mo.App. 1987).

The victim was called to the stand, but for the most part she was uncooperative and her answers were unresponsive. Many of the questions directed to her did not ask what had happened to her, but rather what she previously told the questioning attorney on deposition. She gave no testimony from the stand which incriminated the defendant. She did not confirm either the making or the accuracy of the prior statements introduced into evidence and appeared to deny some of them. She did not provide any meaningful testimony that could be the subject of effective cross examination. We must therefore consider her to be an "unavailable" witness for our confrontation clause analysis and all practical purposes.

Thus the state may not rely on *§ 491.-074, RSMo 1986*, which authorizes the consideration as substantive evidence of prior inconsistent statements of a witness who testifies. Cases such as *State v. Wright*, 751 S.W.2d 48 (Mo. banc 1988), and *State v. Hester*, 801 S.W.2d 695 (Mo. banc 1991), in which the victim testified, do not respond to the present problem. In *Hester*, the child victim took the stand but refused to answer questions. We concluded, however, that defense counsel failed to preserve a claim of error because he did not avail himself of the opportunity to question him. *Hester*, 801 S.W.2d at 697. Here counsel preserved the point by attempting to cross-examine through appropriate questioning.

The trial judge did not have the benefit of *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). As to both offers of evidence, he found, in the language of the statute, that there were "sufficient indicia of reliability based upon time, content and circumstances." He therefore overruled the objections.

*Idaho v. Wright* dealt with a statute which, like *§ 491.075*, authorized trial judges to admit evidence that historically would have constituted inadmissible hearsay. That statute, unlike ours, was not confined to statements by children, but that circumstance is legally insignificant. The Supreme Court of the United States drew a sharp distinction between the "firmly rooted" hearsay exceptions such as excited utterance, dying declaration, and declarations against pecuniary or penal interest, on the one hand, and newly established exceptions such as Idaho sought to establish on the other. The Court pointed out that hearsay exceptions of recent origin "do not share the same tradition of reliability that supports the admissibility of statements under a firmly rooted hearsay exception." *Idaho v. Wright*, 110 S.Ct. at 3147–48. They are therefore " 'presumptively unreliable and inadmissible for Confrontation Clause purposes,' " *Idaho v. Wright*, 110 S.Ct. at 3148 (quoting *Lee v. Illinois*, 476 U.S. 530, 543, 106 S.Ct. 2056, 2063, 90 L.Ed.2d 514 (1986)). The Court continued:

> Thus, unless an affirmative reason, arising from the circumstances in which the statement was made, provides a basis for rebutting the presumption that a hearsay statement is not worthy of reliance at trial, the Confrontation Clause requires exclusion of the out-of-court statement.

*Idaho v. Wright*, 110 S.Ct. at 3150.

These rather strict standards require more thorough and detailed preadmission scrutiny than may have been utilized in some of our cases.[5] Because *Idaho v. Wright* was not available to the trial court and Missouri precedent did not require the trial judge to apply a presumption against admissibility of an unavailable child declarant's out-of-court statements, the case must be remanded for a further hearing by the trial judge.

The Supreme Court did not set out explicit standards to be applied in determining whether statements that would otherwise constitute inadmissible hearsay may be received under a statutory exception. The Court pointed to state and federal cases considering as factors "spontaneity and constant repetition," "use of terminolo-

---

5.  In *State v. Mills*, 723 S.W.2d 68 (Mo.App.1986), for example, there is no indication that the trial court found indicia of reliability in the unavailable child declarant's statements to his mother. However, that case might be explained on the basis that the defendant did not raise a constitutional challenge to admission of the statement.

gy unexpected of a child of similar age," "lack of motive to fabricate," and "mental state of the declarant," and then stated that "we do not necessarily approve the results that [the cases] reach." *Idaho v. Wright*, 110 S.Ct. at 3150. On one point the opinion is firm. The guarantee of trustworthiness cannot be found in corroborative evidence.[6] To so hold, the opinion states, would be to travel in a circle. The hearsay exceptions must be independently justified. (On this point there was a vigorous dissent.) The opinion also clearly demonstrates that the guarantee of trustworthiness is not supplied simply because the declarant is a child. If *§ 491.075* is understood as establishing a presumption of trustworthiness in the declarations of a very young child, it must be qualified by *Idaho v. Wright.*

We cannot determine from this record whether the victim's statements could overcome the *Idaho v. Wright* presumption of inadmissibility. The statement to her mother was made several weeks after the father could have had access to her, and so cannot be justified as an expansion of the excited utterance exception. We recognize the cases holding that the lapse of a period of time between the incident and the statement does not necessarily preclude admission of the statement,[7] but *Idaho v. Wright* requires an affirmative demonstration of trustworthiness. The victim's statement to her mother was admitted without a proper foundation, and its admission cannot be considered harmless error. The trial was sharply contested, with many issues of credibility and alleged incongruities. Nor is it appropriate simply to remand the case for additional findings by the trial judge to determine whether the verdict may stand. A new trial is required at which the trial judge should examine both the admissibility of the evidence and the submissibility of the state's case under the evidence deemed admissible.

Because we have already determined that a new trial is required, we need not decide whether receipt of the statements to the art therapist constituted prejudicial error. Admission of these statements should also be reevaluated under the *Idaho v. Wright* standard. These statements differ from those to the mother in that they were made to a professionally qualified interviewer who explicitly testified that she did not try to lead the victim or suggest anything to her; the statements were illustrated by use of the clay and drawing materials, thus minimizing the risk of prior suggestion; and the sessions extended over a substantial period of time. In mentioning these circumstances we do not mean to preclude counsel from suggesting other pertinent circumstances or to limit the authority of the trial court. Nor do we indicate any opinion whatsoever about the finding which should be made on remand.[8] We again emphasize that, under *Idaho v. Wright*, the inquiry must start with a presumption that the statements are inadmissible, and that any decision to admit them must be made without consideration of corroborating evidence.

The judgment is reversed as to both counts and the case is remanded for consistent proceedings under the guidance of this opinion.

ROBERTSON, C.J., COVINGTON, HOLSTEIN, BENTON and THOMAS, JJ., and RENDLEN, Senior Judge, concur.

---

6. The Court did not preclude other uses of corroboration, such as determining submissibility, or harmlessness of error. Nor does the opinion preclude lack of corroboration as a circumstance justifying discretionary exclusion.

7. *See, e.g., State v. Zamora*, 809 S.W.2d 83 (Mo. App.1991); *State v. Boyer*, 803 S.W.2d 132 (Mo. App.1991); *State v. Keil*, 794 S.W.2d 289 (Mo. App.1990).

8. The defendant points to inconsistencies in the statements and in the language used, and to some fantastic statements during the session with the therapist, such as the child's claim that she drank horse's blood. The trial court may give such attention to them as it thinks appropriate. In making its preliminary finding on the issue of admissibility, the court may consider the victim's statements in context.