STATE of Missouri, Respondent,

v.

Toby WALKER, Appellant.

No. WD 49365.

Missouri Court of Appeals,
Western District.

July 25, 1995.

Emmett D. Queener, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Becky Owenson Kilpatrick, Asst. Atty. Gen., Jefferson City, for respondent.

Before HANNA, P.J., and BERREY and SPINDEN, JJ.

BERREY, Judge.

Appellant, Toby Walker, appeals his jury conviction of sodomy, § 566.060, RSMo. Supp.1992. Following the jury's recommendation, the trial court sentenced appellant to 12 years imprisonment. In his sole point,

appellant claims the trial court erred in admitting certain hearsay evidence testimony of three witnesses who spoke to or interviewed the child-victim. Specifically, he claims the state failed to demonstrate particularized guarantees of trustworthiness as required by § 491.075, RSMo.Supp.1992. Affirmed.

The evidence, viewed in the light most favorable to the verdict, was that the victim, Patricia, was six years old at the time of the charged incident. Patricia has cerebral palsy and functioned mentally at that time at a three- or four-year-old level. She was, however, enrolled in kindergarten, attending special education classes.

On or about March 21, 1993,[1] appellant's girlfriend, Tina Hundley, agreed to babysit Patricia for a short period beginning around noon. Ms. Hundley lived in an apartment with appellant and their two children. That evening, Patricia and her mother, Mary Nichols, were playing on the sofa when Ms. Nichols kissed Patricia on the cheek. Patricia spontaneously responded by stating that appellant had kissed her all over her body. Ms. Nichols "freaked out" and called a friend from the Division of Family Services (DFS) for advice. Ms. Nichols also called Amy Warden, a social worker with the Family Guidance Center who had been counseling the family.

Ms. Warden came to the Nichols' home the next day intending to offer support while Patricia was interviewed by a DFS worker. However, when Patricia arrived home from school, she told Ms. Nichols and Ms. Warden that a DFS worker had talked to her at school. Patricia stated the DFS worker's name was Kathy. Ms. Nichols asked Patricia what Kathy talked to her about, and Patricia said "about what Toby did." Ms. Nichols then asked Patricia if she wanted to tell Ms. Warden what happened. Patricia said, "yes," and went to get a doll from her room. She brought the doll back, placed it on the table and said, "Toby licked me." When asked where appellant licked her, Patricia pointed to the vaginal area on the doll. Patricia then asked to go to her room and close the door, saying that was what appel-

lant did. She put the doll on the bed, got on top of it, moved up and down, and said "sex." Patricia said that it happened when she and appellant were naked in bed in Ms. Hundley's bedroom. She told Ms. Warden that appellant took her underpants off and licked her "pee-pee."

Patricia then asked for a piece of paper and drew an object she described as appellant's "pee-pee." She drew scribble marks around the object and said it was "hair." She drew a check mark on the paper and said it meant appellant was in trouble, and she drew more scribbles describing them as "sex." Patricia then stated, "Toby wants me to be his honey," and, he put his "pee-pee" on her "butt" and "pee-pee."

On or about March 24, 1993, Patricia was interviewed by Detective Carol Jo Cummings at the St. Joseph Law Enforcement Center. Detective Cummings began the interview by introducing herself and reviewing Patricia's knowledge of body parts. Patricia described her vaginal area as her "pee-pee," pointing to her vagina when asked where her "pee-pee" is located. Detective Cummings asked Patricia to tell her what she had told her mother. Patricia stated that appellant kissed her "pee-pee." She also said that appellant licked her "pee-pee" and hurt her "pee-pee" with his "pee-pee," and she indicated that appellant's "pee-pee" was different from hers because it was "long." Patricia added that appellant had touched her "butt" with his tongue. She stated that it felt wet and happened in Ms. Hundley's house in appellant's bed.

Detective Cummings then presented Patricia with anatomically correct dolls which Patricia immediately undressed. Detective Cummings asked Patricia to identify the body parts on one of the dolls. Her identification of body parts was consistent with terminology expected of children her age as she pointed out the "pee-pees" and the adult female doll's "boobs." Using the dolls, Patricia then demonstrated what appellant had done. She placed the male doll on its back and placed the young female doll on top,

1. The dates given by the several witnesses are at times inconsistent. However, all witnesses de-scribe the events as occurring within the same few days.

placing the male's penis in the female's vagina. When asked what she was demonstrating, Patricia stated that appellant had hurt her "pee-pee." She then put the female doll's mouth up to the male doll's penis and said, "Toby done this to me too." Detective Cummings then asked Patricia if anybody other than appellant ever hurt her "pee-pee," and Patricia responded "no." Detective Cummings specifically asked Patricia if her father, brothers, mother or Ms. Hundley ever hurt her "pee-pee," and Patricia replied "no" each time. The interview ended with Patricia repeating the demonstration with the dolls in a manner consistent with earlier demonstrations.

Appellant was thereafter charged with one count of sodomy on July 7, 1993. The state filed pretrial motions to admit Patricia's statements made to others pursuant to § 491.075. The state initially indicated in its motions that Patricia was not expected to testify at trial. However, after presenting evidence on the motions, the state indicated that it was proceeding on the assumption that Patricia would be able to testify at trial although the state's attorney admitted he would not know for certain until he called Patricia to the stand. The trial court heard argument on the appropriate test for admissability of Patricia's statements and held that sufficient "indicia of reliability" were present for admission of the statements at trial.

Patricia was called as a witness at trial on March 7, 1994. However, she was unresponsive to examination, and the trial court deemed her "unavailable" to testify. After reviewing the pretrial hearing transcripts, the court held that there were "particularized guarantees of trustworthiness" in Patricia's statements made to her mother, Amy Warden and Detective Cummings to allow those statements at trial. These three witnesses provided testimony for the state's case-in-chief.

Appellant also testified at trial, denying that he ever touched Patricia. Appellant stated that on the day in question, he got up from bed wrapped in a sheet and started for the bathroom. On the way, he tripped and lost the sheet, exposing his nude body in front of Patricia.

Ms. Hundley also testified on behalf of appellant. She repeated the story about the sheet incident and also testified that Patricia once reported to her allegations of sexual abuse by Patricia's older brothers and that she had relayed this information to Patricia's mother. Ms. Nichols, however, denied this allegation in her direct testimony.

In rebuttal, the state offered the testimony of Katherine Phoenix, the DFS worker assigned to investigate the case and the woman who initially interviewed Patricia at school. Ms. Phoenix testified that she interviewed appellant on June 24, 1993, while he was incarcerated under this charge. She stated that appellant did not reveal the incident with the sheet during that interview. Ms. Phoenix also testified that she spoke with Ms. Hundley by telephone on June 30, 1993, and that Ms. Hundley told her appellant was not in the apartment on the day in question. The following day, Ms. Hundley went to Ms. Phoenix' office and revised her story to include the incident with the sheet.

After a brief deliberation, the jury found appellant guilty, and the trial court subsequently sentenced him to 12 years imprisonment pursuant to the jury's recommendation. This appeal followed.

Appellant primarily complains that the trial court erred in permitting Ms. Nichols, Ms. Warden and Detective Cummings to testify regarding Patricia's hearsay statements in that the state failed to demonstrate particularized guarantees of trustworthiness as required by § 491.075. Because Patricia was interviewed by a DFS worker prior to making statements to Ms. Warden and Detective Cummings and the DFS worker did not testify regarding the circumstances of that interview, appellant contends this gap taints the subsequent interviews. According to appellant, in the absence of testimony regarding the initial interview, the state cannot overcome the presumption that Patricia's hearsay statements are inadmissible. Appellant also briefly argues that Ms. Nichols' pretrial hearing testimony regarding Patricia's statements contradicted her trial testimony so that the testimony should be excluded.

The state initially responds that appellant has not preserved either issue for appellate review. The state notes that appellant objected at trial to the admissibility of Patricia's hearsay statements on the general ground that the state failed to demonstrate particular guarantees of trustworthiness, without pointing to any specific error. That is, appellant did not object on the specific basis that an intervening interviewer tainted the subsequent statements of the victim. The state therefore argues that this court is not required to review appellant's claimed errors but may exercise its discretion to conduct a review under the standard of plain error. Rule 30.20. We reject the state's initial response.

■ "[T]o preserve a claim of error in the reception of evidence, an accused must object with sufficient specificity to apprise the trial court of the grounds for the objection." *State v. Fleer*, 851 S.W.2d 582, 592 (Mo.App. 1993). Appellant has met the test. Both at trial and on appeal he claims the state failed to demonstrate particular guarantees of trustworthiness. We will therefore review appellant's claimed error.

Appellant concedes that § 491.075 permits a child-victim's hearsay statements to be admitted at trial as substantive evidence under certain circumstances.[2] However, he argues that the state failed to overcome the presumption of their inadmissibility in this case.

■ Out-of-court statements of a child-victim are presumptively unreliable and inadmissible where the child is unavailable to testify at trial and the statement does not fall within an otherwise firmly rooted exception to the hearsay rule. *Idaho v. Wright*, 497 U.S. 805, 817, 110 S.Ct. 3139, 3148, 111 L.Ed.2d 638 (1990); *State v. Jankiewicz*, 831 S.W.2d 195, 198 (Mo. banc 1992). However, such statements are admissible if they possess "particular guarantees of trustworthiness." *Idaho v. Wright*, 497 U.S. at 818, 110 S.Ct. at 3148; *State v. Jankiewicz*, 831 S.W.2d at 198. Particular guarantees of trustworthiness (i.e., reliability) must be judged on a totality of the circumstances test, considering factors such as spontaneity and constant repetition, use of terminology unexpected of a child of similar age, lack of motive to fabricate, and the mental state of the declarant. *Idaho v. Wright*, 497 U.S. at 821, 110 S.Ct. at 3150; *State v. Murray*, 838 S.W.2d 83, 86 (Mo.App.1992). These factors are not exclusive, and it is within the trial court's discretion to determine if a child's out-of-court statements have sufficient indicia of reliability to be admissible. *State v. Jefferson*, 818 S.W.2d 311, 312 (Mo.App.1991). "[T]he unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made." *Idaho v. Wright*, 497 U.S. at 822, 110 S.Ct. at 3150.

In the case at bar, the trial court conducted three separate hearings prior to trial and pursuant to § 491.075 to determine whether sufficient indicia of reliability exists to admit the victim's hearsay statements at trial. On September 15, 1993, the trial court heard testimony of Detective Cummings regarding the circumstances under which her conversation with Patricia took place. On October 13, 1993, the trial court heard testimony from Ms. Nichols as to the circumstances surrounding her conversation with Patricia. Ms. Hundley also testified for appellant on October 13, 1993. On December 6, 1993, Ms. Warden testified regarding the circumstances under which her interview of Patricia was conducted. After taking the matter un-

---

**2.** Section 491.075, RSMo.Supp.1992, provides, in relevant part, that:

1. A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2)(a) The child testifies at the proceedings; or

(b) The child is unavailable as a witness; or

(c) The child is otherwise physically available as a witness but the court finds that the significant emotional or psychological trauma which would result from testifying in the personal presence of the defendant makes the child unavailable as a witness at the time of the criminal proceeding.

der advisement, the trial court on December 30, 1993, held the statements of the child-victim admissible.

On March 7, 1994, the trial court deemed Patricia "unavailable" to testify and reassessed its ruling as to the admissibility of her hearsay statements. The court considered the circumstances surrounding each statement made to the three witnesses and held them to possess particular guarantees of trustworthiness. Specifically, the court found the statement made to Ms. Nichols to be spontaneous with no evidence of any motive of the child to lie or fabricate the claim. These are proper factors to consider, *Idaho v. Wright,* 497 U.S. at 822, 110 S.Ct. at 3150; *State v. Murray,* 838 S.W.2d at 86, and we cannot cite the trial court with error.

With respect to the statements made to Ms. Warden and Detective Cummings, the court noted that both women are experienced in questioning child victims of sexual abuse. This is a legitimate factor in determining reliability. *State v. Phelps,* 816 S.W.2d 227, 230 (Mo.App.1991). Detective Cummings testified that she has attended between 150 to 200 hours of training on interviewing children and that she applied this training in her interview with Patricia. She stated that she asked only direct questions including whether Patricia knows what a lie is. Patricia responded that it is "when you don't tell the truth" and that her statement "was truth."

The record reveals that Ms. Warden also did not ask leading questions. Rather, Patricia's statement to Ms. Warden was largely spontaneous. When asked if she wanted to tell Ms. Warden what happened, Patricia spontaneously went to retrieve her doll. She then candidly went to her bedroom and later asked for paper in order to draw.

We affirm the trial court's additional reliance on the young child's explicit description of sexual contact and particularly her consistent repetition of appellant as the perpetrator of those acts. Contrary to appellant's claim, Patricia's statement to Detective Cummings was essentially the same as her statement to Ms. Warden although more detailed as a result of more direct, nonleading questions.

■ We do not adopt appellant's view that the trustworthiness of Patricia's statements depends on testimony regarding the initial interview by the DFS worker, Ms. Phoenix. Out-of-court statements made by children regarding sexual abuse arise in a wide variety of circumstances, and there is no fixed set of procedural prerequisites to the admission of such statements at trial. *Idaho v. Wright,* 497 U.S. at 817, 110 S.Ct. at 3148. There is no mechanical test for determining particularized guarantees of trustworthiness. *Id.* at 822, 110 S.Ct. at 3150.

The facts of the instant case provide other guarantees of reliability. First, Patricia's statements were spontaneous. She explained what occurred with little prompting. Second, Patricia's spontaneous revelations of appellant's acts were consistent. Her statement to Detective Cummings was essentially the same as her statement to Ms. Warden and more detailed than her initial statement to her mother. Third, Patricia's knowledge of intimate sexual acts was highly unusual for a child of her tender years. Her age, knowledge and child-like description of appellant's acts give her statements the ring of truth. Finally, there is no evidence in the record indicating that Ms. Nichols, Ms. Warden or Detective Cummings had any motivation to lie about the circumstances surrounding the making of the statements.

Moreover, the trial court's admission of the hearsay evidence did not prevent appellant from introducing evidence pertinent to his defense but merely allowed the jury to consider certain relevant evidence offered by the state. *See State v. Wright,* 751 S.W.2d 48, 52–53 (Mo. banc 1988). Appellant could have called Ms. Phoenix to testify at the pretrial hearings, but he did not. Similarly, appellant could have used Ms. Nichols' claimed inconsistency in testimony to attack her credibility. Under the facts of this case, we cannot say the trial court abused its discretion.

Affirmed.

All concur.