696 So.2d 1220 (1997)
Carlos Lazaro ANDREU, Appellant,
v.
STATE of Florida, Appellee.
No. 96-00400.
District Court of Appeal of Florida, Second District.
May 30, 1997.
*1221 Richard Escobar of Richard Escobar, P.A., Tampa, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Debra F. Hogge, Assistant Attorney General, Tampa, for Appellee.
NORTHCUTT, Judge.
Carlos Andreu challenges his conviction for attempted second degree murder and the enhanced sentence the court imposed for use of a firearm during the crime. Because the evidence was insufficient to prove Andreu guilty of the crime, we reverse his conviction. Consequently, we need not address the propriety of his sentence.
The facts presented at trial showed that Andreu and two of his friends, Seth Price and Anthony Collins, met one afternoon and went for a drive in Price's new car. At some point during the outing, Andreu showed the other two his gun and let them handle it. He was employed as a corrections officer and had a permit to carry the gun. The young men drove to several different places as the afternoon turned to night. On the spur of the moment, Collins suggested they drive to the home of his new girlfriend, Tracy Pinokie. Price knew Ms. Pinokie and also knew that her father did not approve of her relationship with Collins. Andreu had never met either of the Pinokies.
When the trio arrived in the Pinokies' neighborhood Price dropped Collins off near his girlfriend's residence. Price then drove a short distance away with Andreu, who was sitting in the back seat. Mr. Pinokie saw the car drive by his home. According to Collins, who was hiding on the side of the Pinokies' house, Mr. Pinokie and his daughter engaged in a heated conversation. Collins testified that, shortly thereafter, he saw Mr. Pinokie put his dog and shotgun in his truck and drive off in the direction of Price's car. Collins ran to the Price vehicle, jumped in the front passenger seat, and advised his comrades that his girlfriend's father was coming after them with a shotgun. At that moment, Mr. Pinokie drove around the corner. A chase ensued, during which Collins obtained Andreu's gun and began shooting at Mr. Pinokie. Andreu was crouched on the car's rear floorboard while the shots were fired. Eventually, the Price car sped away from Mr. Pinokie's truck. Fortunately, Mr. Pinokie was not hurt.
The main factual issue at Andreu's trial centered on his role, if any, in Collins's acquisition and use of the gun he fired at Mr. Pinokie. At trial, Price testified that the gun was beside him on the front seat, and that he handed it to Collins. The state attempted to impeach Price with his prior statement to police that he did not know how Collins obtained the gun, but Price insisted the earlier statement was a lie and reiterated the truth of his trial testimony. Similarly, Collins testified that Price gave him the gun, which had been either in Price's lap or under the driver's seat. The state also confronted Collins with his prior statement. He had given the police a written account alleging that when Andreu showed him the gun he said, "if the shit comes down, I got the gun in your back." He also said that "[Andreu] handed up the gun and [Price] was driving really fast and said, get rid of him. [Price] could not shoot, he handed me the gun and I shot six times in the air and once about the sixth shot." When confronted with his statement, Collins testified he didn't realize what he wrote or how or why he wrote it. He said he was really "out there" when he was writing it. He also claimed the police were yelling at him and would not allow him to see his mother. Collins said that all he remembered at the time of the trial was that Price handed him the gun; he did not remember Andreu giving the gun to Price or saying "get rid of him."
At the end of the state's case, and at the close of all evidence, defense counsel moved for a judgment of acquittal on the ground that Andreu could not be convicted based solely on Price's and Collins's prior inconsistent statements. The trial judge noted that he considered it a "very close issue" whether the state had proved its case. Nevertheless, he denied Andreu's motion and submitted the matter to the jury, which found Andreu guilty of attempted second degree murder.
We first note that the prior statements should have been admitted only for *1222 impeachment purposes. Andreu, however, did not object to the statements on hearsay grounds, nor did he ask for a limiting instruction that the jury should consider the evidence solely as impeachment. Because he failed to do so, he cannot challenge the admission of this evidence. Even so, as a matter of law, "in a criminal prosecution, a prior inconsistent statement standing alone is insufficient to prove guilt beyond a reasonable doubt." State v. Moore, 485 So.2d 1279, 1281 (Fla.1986). The Florida Supreme Court recently reaffirmed this rule in State v. Green, 667 So.2d 756 (Fla.1995), a case in which the victim's prior inconsistent statements could have been admitted under the child victim hearsay exception, section 90.803, Florida Statutes (1989). Still, the court held such evidence, standing alone, would have been insufficient to sustain the conviction. 667 So.2d at 760-761.
In light of Green and Moore, we have reviewed the record to determine whether any evidence, other than the prior statements of Price and Collins, supported Andreu's conviction. In order to sustain a conviction for attempted second degree murder, the state must prove that the defendant committed an "act imminently dangerous to another and evincing a depraved mind regardless of human life...." § 782.04(2), Fla. Stat. (1995); see also § 777.04(1), Fla. Stat. (1995) (defining an attempt). Obviously, Collins committed such an act; he fired a gun at a man driving a truck. See Presley v. State, 499 So.2d 64 (Fla. 1st DCA 1986) (evidence of argument that resulted in defendant discharging gun into window of automobile and killing young girl sufficient to sustain conviction for second degree murder). If the direct testimony at trial had shown that Andreu handed Price the gun to give to Collins, we would not hesitate to affirm Andreu's conviction on the theory that he was a principal to the crime. § 777.011, Fla. Stat. (1995). The only evidence of this scenario, however, came in the form of Price's and Collins's pretrial statements to the police. Our review of the record confirms that both these witnesses recanted their previous accounts of the incident, and that those accounts were inconsistent with their trial testimony. No other evidence corroborated Price's and Collins's early versions of the episode. See Green, 667 So.2d at 761.
Without those statements, the only facts implicating Andreu were that he brought the gun with him and showed it to his friends, and that he failed to report the shooting after it took place. While Andreu's behavior on the day of the incident was questionable, the evidence at trial did not establish that he intended that a crime be committed and did some act that assisted Collins in actually committing the crime. That being the case, his conviction cannot stand. § 777.011, Fla. Stat. (1995); Staten v. State, 519 So.2d 622, 624 (Fla.1988). Accordingly, we reverse Andreu's conviction, and remand to the trial court with directions to discharge him.
Reversed and remanded.
FRANK, A.C.J., and WHATLEY, J., concur.