714 So.2d 462 (1997)
Bryant WILLIAMS, Appellant,
v.
The STATE of Florida, Appellee.
No. 97-544.
District Court of Appeal of Florida, Third District.
December 31, 1997.
Rehearing Denied January 14, 1998.
Leonard J. Cooperman, Miami, for appellant.
Robert A. Butterworth, Attorney General, and Paulette Taylor, Assistant Attorney General, for appellee.
Before JORGENSON and SORONDO, JJ., and BARKDULL, Senior Judge.

ON MOTION FOR REHEARING GRANTED IN PART
SORONDO, Judge.
We revisit this case a third time due to the parties' insistence on raising their most persuasive issues on rehearing. Upon the state's confession of error as to the defendant's conviction on count 1 of the Information, we grant the defendant's motion for rehearing as to that count and reverse his conviction and sentence thereon. The Motion for Rehearing is denied on all other grounds. Because the motion raises an issue worthy of discussion we withdraw our previously issued "substituted" opinion and replace it with the following.
Bryant Williams appeals the trial court's judgment of conviction and sentence for the crimes of burglary with assault (3 counts), aggravated stalking and simple battery (2 counts).
On July 6, 1996, Officer Lillian Hunter of the Miami Police Department responded to a dispatch issued as a result of a 911 call and contacted Linda Davis and her son, Osami, the caller. When she arrived she observed that Davis had a lump on her forehead and an injury to her breast. She was also very *463 agitated and rambling. At that time Davis told the officer that her boyfriend, Williams, had forced his way into her apartment and struck her on the forehead. She further stated that she had a domestic violence injunction against Williams and that earlier that day she had another fight with Williams during which he bit her breast.
On July 9, 1996, Ms. Davis had another altercation with the defendant and called 911 from a neighbor's house. The police again responded and she told them that Williams had threatened to kill her.
At trial, the state sought to introduce Ms. Davis' statements to Officer Hunter on July 6th as excited utterances under section 90.803(2), Florida Statutes. The state further offered the tape recordings of Osami's 911 call on July 6th and Ms. Davis' 911 call of July 9th as excited utterances.
The state called both Linda and Osami Davis to the witness stand. As has become lamentably common in cases of domestic violence, Davis' testimony before the jury was diametrically contrary to her original statements to the police. She denied any wrongdoing by Williams, insisting that he had a key to her home and was welcome there. She additionally described herself as the aggressor on both July 6th and 9th and argued that Williams was only defending himself from her attack. Osami's testimony, although somewhat consistent with his 911 call, was framed in such a way as to favor Williams. He repeatedly tried to minimize the magnitude of the incident on July 6th. At one point he denied having cried during his 911 call for help, even though both the prosecutor and the defendant's attorney acknowledged on the record that the tape clearly indicates that he was crying hysterically.
On appeal, the defendant argues that the entirety of the state's case rests exclusively on the "prior inconsistent statements" of the victim and her son. In the absence of any independent evidence of guilt, he posits, his convictions must be reversed. State v. Moore, 485 So.2d 1279 (Fla.1986); Joyce v. State, 664 So.2d 45 (Fla. 3d DCA 1995); Santiago v. State, 652 So.2d 485 (Fla. 5th DCA 1995).
The state initially responded that although the statements were, in fact, "prior inconsistent statements," there was independent evidence of guilt, to-wit: photographs of the victim's physical injuries. These photographs, along with the responding officer's description of the victim's injuries on July 6th, the state suggested, were sufficient to distinguish this case from the cases relied upon by the defendant. In the first motion for rehearing,[1] the state persuasively argued that the statements were not "prior inconsistent statements" but, rather, "excited utterances" which were admissible as substantive evidence, and consequently, that the analysis of the Moore, Joyce and Santiago cases did not apply to this case. We agreed and affirmed, distinguishing these three cases as follows:
In Moore, the state's two witnesses testified before a grand jury in such a way as to inculpate Moore. At a pre-trial deposition, the witnesses both recanted their grand jury testimony. At trial, the witnesses testified that they had lied to the grand jury and were impeached with their grand jury testimony. There was no other evidence of Moore's guilt. The Supreme Court held that a prior inconsistent statement was insufficient to support a conviction where it was the only substantive evidence of guilt. Moore, 485 So.2d at 1281.
In Joyce, the state obtained the sworn statements of two people who testified that they had seen Joyce commit the crimes charged. During trial, both witnesses denied that the defendant had committed the very same crimes. The state impeached the witnesses with their prior testimony. The impeachment evidence was the only evidence of guilt. Relying on the Moore decision, this court held that such evidence was insufficient to support the defendant's conviction. Joyce, 664 So.2d at 46.
In both Moore and Joyce, the prior testimony of the witnesses in question could be characterized only as prior inconsistent statements. *464 Neither the grand jury testimony of the Moore witnesses nor the deposition testimony of the witnesses in Joyce fell within any of the exceptions to the hearsay rule.
The facts of the Santiago case were somewhat different and not as clear. In Santiago, the defendant was convicted for the crime of attempted second degree murder and sexual battery. As explained by the Fifth District Court of Appeal:
The prosecution for attempted murder was predicated upon the original version of a choking incident given to the police by the victim, Ms. Oquendo, immediately after the incident. Prior to trial she recanted her original statement in regard to the nature of the choking and the events surrounding it, as well as her statement in regard to the alleged sexual battery.
Santiago, 652 So.2d at 486 (footnote omitted)(emphasis added). The court held that because the only evidence of guilt was the victim's prior inconsistent statement, Santiago's conviction could not stand. Although the factual recitation above suggests that the victim's original version of events might have been an excited utterance, the court did not characterize it that way and we presumed that it was not admitted as such. We concluded, therefore, that Santiago is consistent with Moore and Joyce, and not inconsistent with our analysis.
In the second motion for rehearing in this case, the defendant argues that the Florida Supreme Court's decision in State v. Green, 667 So.2d 756 (Fla.1995), compels a reversal in this case. In Green, the Supreme Court held that a prior statement of a child victim of sexual abuse introduced pursuant to the provisions of section 90.803(23), Florida Statutes, which directly conflicted with the victim's trial testimony, was insufficient, standing alone, to sustain a criminal conviction. The Court stated:
Our decision in State v. Moore, 485 So.2d 1279 (Fla.1986)(Moore II), is dispositive and requires a finding that this evidence, standing alone, is insufficient to convict Green.
In Moore II, we held that, in a criminal prosecution, a prior inconsistent statement standing alone is insufficient as a matter of law to prove guilt beyond a reasonable doubt. We reiterate that decision today, finding that our holding in Moore II applies regardless of whether the prior inconsistent statement is admitted under section 90.801(2)(a) or section 90.803(23).
Id. at 760. The defendant argues that the conviction and sentence in the present case must be reversed because the legal issue being reviewed is identical to that in Green. We do not agree.
We begin our analysis of the defendant's position with a discussion of the related case of Department of Health & Rehabilitative Services v. M.B., 701 So.2d 1155 (Fla.1997). The defendant correctly argues that M.B. is not dispositive of this appeal. Nevertheless, the case is significant to our analysis because the Court approvingly cites the following language from a respected treatise on the law of evidence:
There is some authority that, if the victim's trial testimony does not indicate that abuse occurred, the victim's out-of-court statements that the abuse occurred are not sufficient, by themselves, to support a conviction. The rationale for these decisions is not clear. If the rationale is that the out-of-court statement is lacking the necessary reliability as a result of the circumstances in which it was made, the analysis is appropriate. Section 90.803(23) and the defendant's confrontation rights require this analysis. If the basis is that, because the out-of-court statement which is admissible under a recognized hearsay exception, is inadmissible simply because it is inconsistent with the in-court testimony of the witness, the reasoning should not be followed. Although a prior statement which is admitted pursuant to section 90.801(2) is not sufficient by itself to support a conviction, the rationale should not be extended to statements admitted under a section 90.803 hearsay exception. These exceptions are surrounded by circumstantial guarantees of reliability which are not necessarily present when a statement is offered under section 90.801(2).

Id. (quoting CHARLES W. EHRHARDT, FLORIDA EVIDENCE § 803.23, at 702 (1996 Edition) *465 (footnote omitted))(emphasis in original). The Court's expressed agreement with this concept is difficult to reconcile with its opinion in Green, which, as quoted above, specifically refuses to distinguish between prior inconsistent statements admitted under section 90.801(2) and those admitted under section 90.803(23) for purposes of establishing the legal sufficiency of a criminal conviction secured solely on the basis of such statements. Nevertheless, for the reasons set forth below we do not believe that Green controls the present case.[2]
In distinguishing Green from the present case we need go no further than to note that the hearsay exceptions in the two cases are not the same, indeed they are significantly different. In order to contrast the respective reliability of these two types of hearsay exceptions, we look to the case law which has established when an incriminating statement admissible under an exception to the hearsay rule also meets the requirements of the Confrontation Clause of the Sixth Amendment. Such a statement is admissible only if "it bears adequate `indicia of reliability.' "Ohio v. Roberts, 448 U.S. 56, 67, 100 S.Ct. 2531, 2540, 65 L.Ed.2d 597 (1980). The United States Supreme Court went on to explain that, "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." Id. The excited utterance exception to the hearsay rule, codified in section 90.803(2), Florida Statutes, is a firmly rooted exception to the hearsay rule. J.L.W. v. State, 642 So.2d 1198 (Fla. 2d DCA 1994). See also White v. Illinois, 502 U.S. 346, 355-56, 112 S.Ct. 736, 742-43, 116 L.Ed.2d 848; Idaho v. Wright, 497 U.S. 805, 820-21, 110 S.Ct. 3139, 3149-50, 111 L.Ed.2d 638 (1990).[3] The child victim hearsay exception is not a firmly rooted exception to the hearsay rule. Perez v. State, 536 So.2d 206, 209 (Fla.1988).[4]
*466 In analyzing the reliability of the excited utterance it is important to consider the reasoning which allows its admission. The United States Supreme Court has explained it as follows:
The basis for the "excited utterance" exception... is that such statements are given under circumstances that eliminate the possibility of fabrication, coaching, or confabulation, and that therefore the circumstances surrounding the making of the statement provide sufficient assurance that the statement is trustworthy and that cross-examination would be superfluous.
Wright, 497 U.S. at 820, 110 S.Ct. at 3149. In White, addressing the spontaneous statement exception, a first cousin if not the twin sibling of the excited utterance, the Court said:
A statement that has been offered in a moment of excitementwithout the opportunity to reflect on the consequences of one's exclamationmay justifiably carry more weight with a trier of fact than a similar statement offered in the relative calm of the courtroom.
White, 502 U.S. at 356, 112 S.Ct. at 743. Although these statements were made within the framework of a Confrontation Clause discussion, we believe their reasoning is equally applicable in assessing the sufficiency of evidence necessary to sustain a conviction based solely on an excited utterance. See Rodriguez v. State, 696 So.2d 533 (Fla. 3d DCA 1997).[5]
For the reasons discussed above, we do not believe that Green controls the present case, or that this opinion conflicts with Green or any of the cases relied upon by the defendant. Furthermore, the defendant's implicit suggestion that Green and Moore stand for the proposition that a criminal conviction, secured exclusively on the basis of evidence admitted pursuant to a hearsay exception, can never be affirmed in the absence of independent corroborating evidence is totally incorrect. In Anderson v. State, 655 So.2d 1118 (Fla.1995), the Supreme Court of Florida specifically stated:
[W]e decline to enunciate a blanket rule that no conviction can stand based solely on hearsay testimony.
Id. at 1120.[6]
In this case, the trial judge conducted a hearing outside the presence of the jury during which she heard the testimony of the victim and her son. She also listened to the trial testimony of Officer Hunter and to the tape recorded 911 calls made by the victim and her son. She evaluated the testimony and concluded that the state had established the predicate necessary to admit the statements in question as excited utterances. We can find no error in her analysis. These excited utterances were, on their own, sufficient to deny the defendant's motions for judgment of acquittal and to send the case to the jury. The victim's conflicting statements, like those of her son, presented the jury with a choice of which statements to believe. Their guilty verdict clearly illustrates their determination that Ms. Davis' statements to Officer Hunter, immediately after the violent altercation with the defendant, and her son's hysterical telephone call to the 911 operator, were more credible than their trial testimony.
*467 We affirm the defendant's convictions and sentences on counts 2, 3, 4, 6 and 7 of the Information. Based on the State's confession of error, we reverse his conviction and sentence on count 1 and remand for discharge on that count.
The court will entertain no further motions for rehearing in this case.
NOTES
[1] Our initial opinion in this case reversed the defendant's convictions because, given the arguments presented and our understanding of the facts, we felt bound to do so by Moore.
[2] We are compelled to note that the facts of Green are uniquely disturbing. There, the child victim was a mentally retarded 14 year old girl with a mental age of 7 years and an IQ of 50, who had previously accused another man of "messing with" her. At trial the child not only exonerated the defendant, she identified another man as her assailant.
[3] Because neither White nor Wright specifically says that the excited utterance exception to the hearsay rule is "firmly rooted," we have exhaustively researched this issue and find that the excited utterance is uniformly considered a firmly rooted exception to the hearsay rule. See United States v. Jackson, 88 F.3d 845, 847 (10th Cir.1996); People of the Territory of Guam v. Cepeda, 69 F.3d 369, 373 (9th Cir.1995); Kontakis v. Beyer, 19 F.3d 110, 119 (3d Cir.), cert. denied, 513 U.S. 881, 115 S.Ct. 215, 130 L.Ed.2d 143 (1994); Webb v. Lane, 922 F.2d 390, 393 (7th Cir.1991); Puleio v. Vose, 830 F.2d 1197, 1205-06 (1st Cir.1987), cert. denied, 485 U.S. 990, 108 S.Ct. 1297, 99 L.Ed.2d 506 (1988); Brandon v. State, 839 P.2d 400, 407 (Alaska.Ct.App.1992); State v. Yslas, 139 Ariz. 60, 676 P.2d 1118, 1123 (1984); Vann v. State, 309 Ark. 303, 831 S.W.2d 126, 128 (1992); People v. Mitchell, 829 P.2d 409, 412 (Colo.Ct.App.1991); State v. Bruens, 18 Conn.App. 459, 557 A.2d 1290, 1292, certification denied, 212 Conn. 804, 561 A.2d 946 (1989); Welch v. United States, 689 A.2d 1, 4 (D.C.1996); J.L.W. v. State, 642 So.2d 1198, 1199 (Fla. 2d DCA 1994); People v. Thomas, 178 Ill.2d 215, 227 Ill.Dec. 410, 687 N.E.2d 892 (1997); Price v. State, 591 N.E.2d 1027, 1031 (Ind.1992); State v. Brown, 618 So.2d 629, 633 (La.Ct.App.), writ denied, 624 So.2d 1222 (La.1993); State v. Larson, 472 N.W.2d 120, 125 (Minn.1991), cert. denied, 502 U.S. 1071, 112 S.Ct. 965, 117 L.Ed.2d 131 (1992); State v. Jankiewicz, 831 S.W.2d 195, 198 (Mo.1992); State v. Plant, 236 Neb. 317, 461 N.W.2d 253, 267-68 (1990); Franco v. State, 109 Nev. 1229, 866 P.2d 247, 255 (1993); State v. Lopez, 122 N.M. 459, 926 P.2d 784, 791 (App.), cert. denied, 122 N.M. 279, 923 P.2d 1164 (1996); State v. Rogers, 109 N.C.App. 491, 428 S.E.2d 220, 225, rev. denied, 334 N.C. 625, 435 S.E.2d 348 (1993), cert. denied, 511 U.S. 1008, 114 S.Ct. 1378, 128 L.Ed.2d 54 (1994); State v. Whalen, 520 N.W.2d 830, 831 (N.D.1994); People v. Nieves, 67 N.Y.2d 125, 501 N.Y.S.2d 1, 492 N.E.2d 109, 112 (1986); State v. Shoop, 87 Ohio App.3d 462, 622 N.E.2d 665, 672, appeal dismissed, 67 Ohio St.3d 1478, 620 N.E.2d 851 (1993); State v. Nielsen, 316 Or. 611, 853 P.2d 256, 265 (1993); Commonwealth v. Sanford, 397 Pa.Super. 581, 580 A.2d 784, 787-88 (1990), appeal denied, 527 Pa. 586, 588 A.2d 508 (1991); State v. Orelup, 520 N.W.2d 898, 901 (S.D.1994); Penry v. State, 691 S.W.2d 636, 647 (Tex.Crim. App.1985)(en banc), cert. denied, 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986); State v. Strauss, 119 Wash.2d 401, 832 P.2d 78, 85-86 (1992); State v. Martinez, 150 Wis.2d 62, 440 N.W.2d 783, 789 (1989).
[4] In addition to Green, the defendant relies on Brantley v. State, 692 So.2d 282 (Fla. 1st DCA 1997); L.E.W. v. State, 616 So.2d 613 (Fla. 5th DCA 1993); Ticknor v. State, 595 So.2d 109 (Fla. 2d DCA 1992); Bell v. State, 569 So.2d 1322 (Fla. 1st DCA 1990); Williams v. State, 560 So.2d 1304 (Fla. 1st DCA 1990); and Jaggers v. State, 536 So.2d 321 (Fla. 2d DCA 1988). All of these cases involve the child victim hearsay exception. The only case argued by the defendant on rehearing which does not deal with a child victim hearsay statement is Andreu v. State, 696 So.2d 1220 (Fla. 2d DCA 1997). That case, however, did not involve a statement which fell within a hearsay exception.
[5] We do not suggest that only hearsay evidence which qualifies as a firmly rooted exception is sufficient to sustain a criminal conviction. Like the Supreme Court of Florida, we find persuasive Professor Ehrhardt's conclusion that "although a prior statement which is admitted pursuant to section 90.801(2) is not sufficient by itself to support a conviction, the rationale should not be extended to statements admitted under a section 90.803 hearsay exception." In our view, even a child victim hearsay statement is sufficient, on its own, to sustain a conviction if the statement is determined to carry the "sufficient safeguards of reliability" specifically required by section 90.803(23), Florida Statutes.
[6] Although Anderson was decided before Green, the Supreme Court approvingly restates this concept in M.B., 701 So.2d at 1162, which was decided after Green.